UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVON E. McCOY,<br><br>            Plaintiff,<br><br>    v.<br><br>J. STRATTON et al.,<br><br>            Defendants. | No.  2:12-cv-1137 WBS DAD P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se with a civil rights action seeking relief under 42 U.S.C. § 1983.  Pending before the court is defendants' motion for summary judgment based on plaintiff's alleged failure to exhaust his available administrative remedies prior to filing suit as required.  Plaintiff has filed an opposition to the motion, and defendants have filed a reply.

**BACKGROUND**

Plaintiff is proceeding on his amended complaint against defendants Barnes, Chavez, Epp, Ding Felder, Grinde, Hughes, Martinez, Slaughter, Stratton, Sweeney, and Wells.  In his amended complaint, plaintiff alleges as follows.  On January 25, 2012, prison officials temporarily transferred plaintiff from Salinas Valley State Prison to CSP-Sacramento because he had a court date requiring his appearance.  Upon his arrival at CSP-Sacramento, prison officials in Receiving and Release ("R&R") searched him and deprived of his seizure medication and medical chronos. Defendant Ding Felder promised to return both to plaintiff upon inspection but never did so.  In

the meantime, another prison official interviewed plaintiff, falsely labeled him a threat to the safety and security of the institution, and assigned to administrative segregation ("ad-seg").  (Am. Compl. at 3-4.)

Defendant Epp arrived to transport plaintiff to ad-seg.  Plaintiff asked for his medication and medical chronos back.  Defendant Ding Felder gave plaintiff his chronos but told him that his medication had been misplaced.  Plaintiff told defendant Ding Felder that he would need a wheelchair for transport because his leg was injured and reiterated to defendants Epp and Ding Felder that he needed his seizure medication.  Defendant Stratton then appeared, and he and defendant Epp grabbed plaintiff and began to pull him towards the R&R exit door.  According to plaintiff, defendants Stratton and Epp then pushed him face first against the cages and shouted expletives at him.  Defendants Stratton, Epp, and Ding Felder then hoisted plaintiff into the air by his arm and leg restraints and body-slammed him face first into the concrete.  Defendants Barnes, Hughes, and Sweeney then assisted in the attack and kicked, punched, and choked plaintiff and falsely yelled "stop resisting."  Eventually, plaintiff lost consciousness and awoke lying on a stretcher.  Plaintiff awoke in intense pain and was carried to the emergency medical unit where defendant Nurse Grinde merely checked his blood pressure and did not provide him any medical attention for his physical injuries.  Defendant Grinde also did nothing to get plaintiff his seizure medication, which plaintiff had told Grinde had been misplaced by R&R officers.  (Am. Compl. at 1-7.)

Upon plaintiff's release from the medical unit, defendants Epp and Barnes took him to the psychiatric services unit.  Plaintiff told them that he did not belong in a mental health unit and that he was going to file paperwork on every single person involved with his placement there.  Defendant Barnes told him to shut-up "before your face meets concrete again."  Barnes then yanked plaintiff from the wheelchair and caused him to stumble toward the stairs before him.  Two other unit officers, defendants Wells and Slaughter, then asked plaintiff whether he was the "tough guy" and if so they had a special cell for him.  Defendant Barnes replied "yes" and told them to put plaintiff in the inoperable cell where there was no water supply.  Plaintiff alleges that he could not drink water, wash-up, or even flush the toilet in the cell in which he was placed.

2

1  Plaintiff told defendants Wells, Slaughter, Martinez, and Chavez about the cell, but they never
2  attempted to fix it or turn on the water.  The lack of water became even more problematic because
3  plaintiff did not have a way to take his medication since they had to be crushed and poured into a
4  cup of water.  Without water and his medication, plaintiff suffered a grand mal seizure and had to
5  be rushed to an outside hospital for medical treatment.  (Am. Compl. at 7-10.)

6  Upon plaintiff's return to CSP-Sacramento, prison officials placed him back in ad-seg.
7  Prior to plaintiff's hospitalization, he had appeared before the ICC, and the committee determined
8  he did not deserve to be either in ad-seg or the psychiatric services unit.  According to plaintiff,
9  defendant Stratton found out about a staff complaint plaintiff had previously filed against him and
10 his subordinates and, in retaliation for that filing, Stratton had plaintiff served with new ad-seg
11 papers.  Plaintiff alleges that defendant Stratton further retaliated against him by issuing him a
12 prison rules violation report against him for battery on a peace officer.  Before plaintiff received a
13 hearing on the disciplinary charge, however, he was transferred back to Salinas Valley State
14 Prison.  There, prison officials pursued the prison rules violation report that had been filed against
15 plaintiff at CSP-Sacramento and found him guilty as charged.  (Am. Compl. at 11-13.)

16 In screening plaintiff's amended complaint, the court found that it appeared to state an
17 Eighth Amendment excessive use of force claim, an Eighth Amendment deliberate indifference
18 medical care claim, and a First Amendment retaliation claim.  (Doc. No. 24)

19 **THE EXHAUSTION REQUIREMENT**

20 By the Prison Litigation Reform Act of 1995 ("PLRA"), Congress amended 42 U.S.C. §
21 1997e to provide that "[n]o action shall be brought with respect to prison conditions under section
22 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other
23 correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C.
24 § 1997e(a).  The exhaustion requirement "applies to all inmate suits about prison life, whether
25 they involve general circumstances or particular episodes, and whether they allege excessive
26 force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).

27 The United States Supreme Court has ruled that exhaustion of prison administrative
28 procedures is mandated regardless of the relief offered through such procedures.  See Booth v.

3


Churner, 532 U.S. 731, 741 (2001).  The Supreme Court has also cautioned against reading futility or other exceptions into the statutory exhaustion requirement.  See id. at 741 n.6.  Moreover, because proper exhaustion is necessary, a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal.  See Woodford v. Ngo, 548 U.S. 81, 90-93 (2006).  "[T]o properly exhaust administrative remedies prisoners 'must complete the administrative review process in accordance with the applicable procedural rules,' [ ] - rules that are defined not by the PLRA, but by the prison grievance process itself."  Jones v. Bock, 549 U.S. 199, 218 (2007) (quoting Woodford, 548 U.S. at 88).  See also Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion.'").

In California, prisoners may appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).  Most appeals progress through three levels of review.  See id. § 3084.7.  The third level of review constitutes the decision of the Secretary of the California Department of Corrections and Rehabilitation and exhausts a prisoner's administrative remedies.  See id. § 3084.7(d)(3).  A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available to him.  Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002).

A prisoner may be excused from complying with the PLRA's exhaustion requirement if he establishes that the existing administrative remedies were effectively unavailable to him.  See Albino v. Baca, 747 F.3d 1162, 1172-73 (9th Cir. 2014).  For example, where prison officials improperly screen out inmate grievances, they can render administrative remedies effectively unavailable.  See Sapp v. Kimbrell, 623 F.3d 813, 823 (9th Cir. 2010).  In such a case, "the inmate cannot pursue the necessary sequence of appeals . . . ."  Id.  See also Nunez v. Duncan, 591 F.3d 1217, 1226 (9th Cir. 2010) (excusing an inmate's failure to exhaust because he was precluded from exhausting his administrative remedies by a warden's mistaken instruction to him that a particular unavailable document was needed for him to pursue his inmate appeal); Marella,

568 F.3d 1024 (excusing an inmate's failure to exhaust because he did not have access to the necessary grievance forms to timely file his grievance).

The PLRA exhaustion requirement is not jurisdictional but rather creates an affirmative defense that defendants must plead and prove. See Jones, 549 U.S. at 216 ("[I]nmates are not required to specially plead or demonstrate exhaustion in their complaints."); Albino, 747 F.3d at 1168. A defendant may move for dismissal under Federal Rule of Civil Procedure 12(b)(6) "[i]n the rare event" that a prisoner's failure to exhaust is clear on the face of the complaint. Albino, 747 F.3d at 1168 & 1169. More typically, defendants are required to move for summary judgment under Federal Rule of Civil Procedure 56 and produce probative evidence that proves a prisoner's failure to exhaust. See id. at 1166. If the undisputed evidence viewed in the light most favorable to the prisoner demonstrates a failure to exhaust, the court should grant defendant's motion for summary judgment. On the other hand, if there are material facts in dispute, the court should deny defendant's motion summary judgment. See id.

**DEFENDANTS' STATEMENT OF UNDISPUTED FACTS AND EVIDENCE**

Defense counsel has submitted a statement of undisputed facts supported by citations to declarations signed under penalty of perjury by Litigation Coordinator Young, Inmate Appeals Coordinator Burnett, Chief of the Inmate Correspondence and Appeals Branch Robinson, and Acting Chief of the Office of Appeals Zamora. In addition, defense counsel has submitted copies of plaintiff's inmate grievances and prison officials' responses thereto.

The evidence submitted by defense counsel in support of the pending motion for summary judgment establishes the following. By way of background, before January 28, 2011, the California Department of Corrections and Rehabilitation's ("CDCR") inmate grievance process included an initial "informal" staff review of an inmate grievance. Regulatory revisions have since eliminated this preliminary step in the grievance process. If a grievance is cancelled or rejected, the submitting inmate receives it back with correspondence indicating the deficiencies of the grievance. (Defs.' SUDF 1-2, Zamora Decl.)

On January 25, 2012, defendant Stratton issued a rules violation report ("RVR") charging plaintiff with assault on a peace officer resulting in use of force. Plaintiff received the CDC 115

reflecting the disciplinary charge. In the RVR, defendant Stratton reported that on January 25, 2012, he and defendant Epp escorted plaintiff from R&R to Facility A at CSP-Sacramento. Defendant Stratton noted that plaintiff was using a walking cane at the time. Defendant Stratton also reported that, during the escort, plaintiff stated that he needed his anti-seizure medication and that defendant Stratton told plaintiff that he would receive his medication when he arrived at his assigned unit. Defendant Stratton reported that he and defendant Epp continued to escort plaintiff, but plaintiff turned his body towards defendant Stratton, yelled an obscenity, and struck defendant Stratton's left leg with his cane. Defendant Stratton reported that he used force against plaintiff to gain compliance, but plaintiff resisted the officers' attempts to secure him until defendant Barnes arrived to assist. Defendant Stratton reported that defendants Epp and Barnes then escorted plaintiff to the triage area where plaintiff received medical attention. Defendant Stratton reported that plaintiff was thereafter released to his assigned unit. (Defs.' SUDF 3-12, Young Decl. & Ex. A.)

On February 3, 2012, prison officials provided plaintiff with a copy of the RVR. On the same day, plaintiff requested an investigative employee be assigned to investigate the RVR. On March 1, 2012, Officer Rodriguez interviewed plaintiff regarding the January altercation, and plaintiff denied the assault charge. On March 28, 2012, Officer Rodriguez interviewed defendant Stratton who stated that plaintiff struck him during an escort and, as a result, he needed to use force to gain plaintiff's compliance. Officer Rodriguez interviewed all available staff and inmate witnesses requested by plaintiff but was not able to contact the unnamed nurse that treated plaintiff. (Defs.' SUDF 13-17, Young Dec. & Exs. A & B.)

On April 10, 2012, plaintiff attended a rules violation hearing on the assault charge and appeared before Senior Hearing Officer defendant Salazar. At the hearing, plaintiff pled not guilty and provided a statement in his defense. Plaintiff was found guilty of a Division B disciplinary offense – battery on a peace officer, advised of his right to appeal the findings from the hearing and the procedures for appealing, and given a copy of the rules violation report decision. According to CSP-Sacramento Appeals Office records, plaintiff never appealed the
/////

April 10, 2012 rules violation report decision. (Defs.' SUDF 18-23, Young Decl. & Ex. C, Burnett Decl.)

Turning to plaintiff's inmate appeals, on January 27, 2012, plaintiff submitted an inmate appeal alleging that correctional officers used unnecessary force against him while he was in R&R at CSP-Sacramento. Prison officials assigned the inmate appeal log number SAC P-12-00242. Plaintiff alleged in that appeal that defendant Ding Felder took plaintiff's "keep on person" seizure medicine and medical chronos and that he reminded defendant Ding Felder to return the medicine to him. Plaintiff also alleged that an unidentified officer yanked plaintiff's arm and threw him up against a holding age. Plaintiff further alleged that defendants Ding Felder, Epp, Barnes, Hughes, Sweeney, and two other correctional officers threw him to the ground and assaulted him. (Defs.' SUDF 24-29, Burnett Decl. & Ex. B.)

On April 7, 2012, prison officials at the first level of review granted plaintiff's grievance in part insofar as they inquired into plaintiff's allegations. Prison officials at the first level of review, however, found that staff did not violate CDCR policy. According to CSP-Sacramento's Appeals Office records, plaintiff did not appeal this inmate grievance to either the second or third level of review. (Defs.' SUDF 30-32, Burnett Decl. & Ex. C.)

Plaintiff also submitted a second inmate appeal that prison officials assigned log number SAC P 12-00508. On March 14, 2013, prison officials at the first level of review cancelled this appeal finding that it was duplicative of appeal log number SAC P-12-00242 discussed above. According to CSP-Sacramento's Appeals Office records, plaintiff also never appealed from the prison officials' cancellation of his inmate appeal log number SAC 12-00508. (Defs.' SUDF 34-35, Burnett Decl.)

According to defendants, CSP-Sacramento's Appeals Office records reflect no inmate appeal submitted by plaintiff containing allegations of retaliation against him on the part of prison officials. In addition, there is no record of plaintiff submitting an inmate appeal with allegations that prison officials placed him in an inoperable cell. Finally, there is no record at the CSP-Sacramento's Appeals Office of plaintiff submitting an inmate appeal containing allegations that

1 correctional officers issued plaintiff a false RVR against him. (Defs.' SUDF 36-38, Burnett
2 Decl.)

3       On February 1, 2012, plaintiff submitted an inmate grievance regarding the health care
4 provided to him. That grievance was assigned log number SAC HC 12025690. Therein, plaintiff
5 alleged that unnamed medical staff failed to provide him with adequate medical treatment after
6 the January 25, 2012, altercation. Plaintiff also alleged that medical staff downplayed the
7 seriousness of his injuries and failed to treat him. Plaintiff requested that medical staff be
8 reprimanded and notified that they would face civil repercussions. On February 7, 2012, prison
9 officials informed plaintiff that the Health Care Appeals Office would review his grievance.
10 (Defs.' SUDF 39-42, Robinson Decl. & Exs. B & C.)

11       On February 16, 2012, after bypassing the informal level of review, prison officials at the
12 first level of review partially granted plaintiff's health care grievance. They conducted an
13 interview with plaintiff and investigated his claim. They found that nursing staff examined
14 plaintiff on January 25, 2012, and that a physician had prescribed plaintiff Tylenol to treat his
15 pain. Prison officials at the first level of review also found that plaintiff's physician conducted a
16 follow-up examination on January 26, 2012, which indicated no acute changes to plaintiff's
17 condition. Prison officials at the first level of review determined that the medical staff followed
18 the necessary policies and procedures in meeting plaintiff's medical needs. (Defs.' SUDF 43-47,
19 Robinson Decl. & Ex. D.)

20       On September 18, 2012, prison officials at the second level of review partially granted
21 plaintiff's health care grievance. They informed plaintiff that they were handling his appeal as a
22 staff complaint inquiry and assigned it a new log number – CCI SC 12000714. Prison officials at
23 the second level of review questioned defendants Grinde and Epp and reviewed plaintiff's health
24 records. They found that, in addition to the medical care described in the first level of review,
25 plaintiff received a January 27, 2012, x-ray that indicated no fracture or dislocation. Prison
26 officials at the second level of review also concluded that medical staff provided plaintiff with
27 appropriate medical care warranted for his condition and did not violate any CDCR policies in
28 their treatment of plaintiff. (Defs.' SUDF 48-52, Robinson Decl. & Ex. E.)

On February 20, 2013, prison officials at the third level of review denied plaintiff's health care grievance. They reviewed the appellate documents and supporting evidence and found no violation of CDCR policy. (Defs.' SUDF 53-54, Robinson Decl. & Ex. F.)

Despite this decision at the third level of review in February 2013, between January 25, 2012, the first day the alleged events in this case took place, and August 22, 2012, the day plaintiff filed his amended complaint in this action, plaintiff did not obtain a third level decision on any health care appeal. During that same time period, plaintiff did not submit an inmate health care grievance alleging retaliation by any CCHCS staff. Plaintiff obtained one third level decision between January 25, 2012, and August 22, 2012, on a non-health care appeal that plaintiff had filed with approximately twelve other inmates. That group appeal, assigned log number SVSP 11-02420, concerned the adequacy of food served at Salinas Valley State Prison. That inmate appeal did not relate to the excessive use of force, deliberate indifference, or retaliation claims plaintiff asserts in this federal civil rights action. (Defs.' SUDF 55-60, Robinson Decl. & Ex. A, Zamora Decl. & Exs. A & B.)

## ANALYSIS

As noted above, plaintiff is proceeding against defendants on an Eighth Amendment excessive use of force claim, an Eighth Amendment deliberate indifference medical care claim, and a First Amendment retaliation claim. Below, the court will address defendants' contention that plaintiff failed to properly exhaust each of these claims prior to filing suit as required.

I. <u>Plaintiff's Excessive Use of Force Claims</u>

In the pending motion for summary judgment, defense counsel argues that plaintiff failed to obtain a decision from the third level of review on his inmate appeal concerning defendants' alleged excessive force, and therefore he failed to properly exhaust his administrative remedies. (Defs.' Mem. of P. & A. at 8-9) In opposition to defendants' motion, plaintiff argues that the court should excuse him from complying with the exhaustion requirement because existing administrative remedies were effectively unavailable to him. (Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 12-16, 31-33.) Based on all the evidence presented in connection with the pending motion for summary judgment, the undersigned agrees with plaintiff.

As an initial matter, the parties do not dispute that on January 27, 2012, plaintiff submitted an inmate appeal (SAC P-12-00242) to prison officials alleging that the defendant correctional officers used unnecessary force against him while he was in CSP-Sacramento's R&R awaiting a housing assignment. (Defs.' Mot. for Summ. J., Burnett Decl. Ex. A.) On February 12, 2012, plaintiff had not received a response to the appeal and submitted a second inmate appeal (SAC P 12-00508) to prison officials at Salinas Valley State Prison alleging that defendant correctional officers used unnecessary force against him while he was at CSP-Sacramento. (Pl.'s Opp'n to Defs.' Mot. for Summ. J., Ex. K.) Prison officials at Salinas Valley State Prison screened out this second appeal and directed plaintiff to file it at CSP-Sacramento. (Id., Ex. R.) On February 16, 2012, plaintiff sent his second inmate appeal to CSP-Sacramento, but prison officials again screened out that appeal as duplicative of the one he submitted on January 27, 2012, which was still pending at the time. (Id., Exs. K & P.)

On March 8, 2012, March 28, 2012, and April 13, 2012, CSP-Sacramento Appeals Coordinator Daly sent plaintiff a memorandum indicating there was an exceptional delay in the review of plaintiff's January 27, 2012 appeal due to the "[u]navailability of the appellant, or staff or inmate witness." (Pl.'s Opp'n to Defs.' Mot. for Summ. J., Ex. Q.) On April 7, 2012, Associate Warden Lynch responded to plaintiff's appeal at the first level of review and granted it in part insofar as prison officials inquired into plaintiff's allegations.[1] According to plaintiff, however, he never received a copy of that decision. On May 9, 2012, plaintiff submitted a CDCR Form 22/Request for an Interview and informed prison officials that he still had not received an answer to his January 27, 2012 inmate appeal. (Id. at 15-16 & Ex. S.) Indeed, a prison official named Machea reviewed plaintiff's CDCR Form 22 and signed it prior to it being sent. (Id.)

/////

---

[1] According to defendants' reply, although Associate Warden Lynch drafted the first level response to plaintiff's inmate appeal on April 7, 2012, the first level of review was not complete until April 19, 2012. This is why Appeals Coordinator Daly sent plaintiff the third memorandum indicating there was an exceptional delay in review of his appeal on April 13, 2012,. The appeals office's practice and procedure is to verify the location of the inmate that submitted the inmate appeal after prison officials draft a first or second level review decision and then send a copy of it to him via institutional mail. (Defs.' Reply SUDF 5-9, Burnett Decl.)

A court may excuse a prisoner from complying with the exhaustion requirement when prison officials render administrative remedies effectively unavailable even if prison officials did not act in bad faith. See Sapp, 623 F.3d at 822; Nunez, 591 F.3d at 1224. The Ninth Circuit has cited with approval a Seventh Circuit Court of Appeals decision for the proposition that "prison officials' failure to respond to a properly filed grievance makes remedies 'unavailable' and therefore excuses a failure to exhaust." Sapp, 623 F.3d at 822-23 (citing Dole v. Chandler, 438 F.3d 804 (7th Cir. 2006)).

In this case, construing the evidence in the light most favorable to plaintiff, plaintiff never received prison officials' response to his January 27, 2012, inmate appeal (SAC P-12-00242) even after he took the additional step of filing a CDCR Form 22 seeking an interview regarding the lack of response to that inmate appeal by prison officials. Defendants' contention that prison officials never received plaintiff's Form 22 is of no help to them. First, a prison official signed plaintiff's Form 22 verifying that it was in fact delivered by plaintiff for submission. In addition, although the CSP-Sacramento Appeals Office may have no record of having received plaintiff's Form 22, as one district court has explained in an analogous context:

> Merely because the Appeal Coordinator has no record of having received Plaintiff's Form 602 in May 2007 does not establish that Plaintiff, in fact, failed to timely submit his Form 602 appeal to the Appeal Coordinator in the first instance. At most, it shows non-receipt rather than non-submission . . . . Indeed, if a claim of non-receipt were sufficient to foreclose exhaustion, prison officials, in effect, would have complete control over whether a prisoner could pursue a civil action in federal court. Moreover, a prisoner's rights would be dependent upon the accuracy of the defendant's record-keeping priorities.
>
> Moreover, the Tracking System is not infallible.

Badwi v. Hedgpeth, No. C 08-2221 SBA, 2012 WL 479192 at *4 (N.D. Cal. Feb. 14, 2012).

Consistent with other decisions from this court when faced with similar circumstances, the undersigned finds that here plaintiff should be excused from the exhaustion requirement because he "took reasonable and appropriate steps to exhaust his claim" but was precluded from doing so through no fault of his own. Nunez, 623 F.3d at 823. See also Gray v. Virga, No. 2:12-cv-3006 KJM AC P, 2014 WL 309530 at *11-*12 (E.D. Cal. Jan. 27, 2014) (excusing prisoner from

11

1  exhaustion requirement after he filed inmate appeals and two separate inquiries concerning the
2  status of his inmate appeals but nonetheless received no response from prison officials); James v.
3  Mehta, No. 2:10-cv-1171 LKK DAD P, 2013 WL 5934397 at *5 (E.D. Cal. Nov. 5, 2013)
4  (defendants failed to rebut plaintiff's evidence showing that administrative remedies were
5  effectively rendered unavailable to him after prison officials failed to respond to his inmate
6  appeal even after plaintiff followed up with them); Rupe v. Beard, No. CV-08-2454 EFS (PC),
7  2013 WL 2458398 at *16 (E.D. Cal. June 6, 2013) ("[A]fter an inmate has waited a reasonable
8  period of time and has received no response or notice of delay, the failure by prison officials to
9  abide by inmate-grievance regulations must excuse the inmate's failure to exhaust; otherwise
10 prison officials could indefinitely delay inmates from pursuing legal remedies simply by ignoring
11 all inmate appeals."); Chatman v. Felker, No. CIV S-03-2415 JAM EFB (TEMP) P, 2011 WL
12 445685 at *9 (E.D. Cal. Feb. 3, 2011) (Finding that a prisoner's claims against defendants to be
13 exhausted after he "presented evidence that he had prepared a timely grievance . . . and when he
14 did not receive a response, attempted to pursue that grievance through a number of channels.").
15     Accordingly, defendants' motion for summary judgment based on plaintiff's failure to
16 exhaust administrative remedies with respect to his excessive use of force claims should be
17 denied.
18 II.  Plaintiff's Deliberate Indifference Medical Care Claims
19     In the pending motion for summary judgment, defense counsel also argues that although
20 plaintiff submitted an inmate health care grievance concerning defendants' alleged failure to
21 provide him with adequate medical care (SAC HC 12025690), plaintiff failed to exhaust his
22 medical care claims because prison officials at the third level of review denied his grievance on
23 February 20, 2013, nearly six months after plaintiff filed his amended complaint in this action.
24 (Defs.' Mem. of P. & A. at 10.)  In opposition to defendants' motion, plaintiff acknowledges that
25 he filed this civil action before he received a response to his inmate grievance at the third level of
26 review, but he asks the court to excuse his error because he has since exhausted administrative
27 remedies.  (Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 33.)  Based on the evidence presented in
28 connection with the pending motion, the undersigned concludes that defendants are entitled to

summary judgment in their favor with respect to these claims due to plaintiff's failure to exhaust his available administrative remedies prior to filing suit as is required.

A prisoner must exhaust his constitutional claims prior to asserting them in a civil rights complaint. See Cano v. Taylor, 739 F.3d 1214, 1221 (9th Cir. 2014) (new claims added to a lawsuit via amendment that are exhausted prior to the amendment comply with the exhaustion requirement); Rhodes v. Robinson, 621 F.3d 1002 (9th Cir. 2010) (new claims asserted in an amended complaint are to be considered by the court so long as administrative remedies with respect to those new claims are exhausted before the amended complaint is tendered to the court for filing).

In this case, plaintiff filed his amended complaint in this action prior to the issuance of a decision by prison officials at the third level of administrative review on his inmate grievance complaining about the health care he had received. (Defs.' Mot. for Summ. J., Robinson Decl. Ex. F.) Where, as here, a prisoner exhausts a claim after asserting it in his operative complaint, his subsequent exhaustion cannot excuse his earlier failure to exhaust. Vaden v. Summerhill, 449 F.3d 1047, 1051 (9th Cir. 2006) ("[A prisoner] may initiate litigation in federal court only after the administrative process ends and leaves his grievances unredressed. It would be inconsistent with the objectives of the statute to let him submit his complaint any earlier than that."); McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002) ("Requiring dismissal without prejudice when there is no presuit exhaustion provides a strong incentive that will further these Congressional objectives; permitting exhaustion *pendente lite* will inevitably undermine attainment of them.").

Accordingly, defendants' motion for summary judgment based on plaintiff's failure to exhaust administrative remedies with respect to his deliberate indifference medical care claims should be granted.

III. Plaintiff's Retaliation Claims

Next, defense counsel argues that plaintiff never submitted an inmate appeal alleging that the defendants retaliated against him, and therefore he failed to exhaust administrative remedies with respect to this claim prior to filing suit as well. (Defs.' Mem. of P. & A. at 11-12.) In

opposition to defendants' motion, plaintiff argues that the court should excuse him from complying with the exhaustion requirement with respect to his retaliation claim because on April 29, 2012, he submitted an inmate appeal (SVSP-L-12-01686), which alleged among other things that defendant Stratton issued him an RVR in retaliation for a staff complaint plaintiff had submitted on January 27, 2012, but prison officials screened out that inmate appeal and thereby rendered administrative remedies effectively unavailable to plaintiff. (Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 18-20 & Ex. U.) Based on all the evidence presented in connection with the pending motion, the undersigned is persuaded by plaintiff's argument.

On appeal form SVSP-L-12-01686, plaintiff was asked to state briefly the subject of his appeal. He wrote: "Disciplinary!" Then, in the space provided on the form for him to explain the issue, he complained that:

> As a matter of introduction, the reviewer of this subsequent appeal should make note of the fact that upon conducting the appellant[']s 115 hearing, the senior hearing officer G.R. Salazar made the following statement to appellant: "I could never believe an inmate over an officer." Consequently, said statement could not be more closely related to the "Actuality of Partiality" in which is also associated to the definition of "Bias." (which seems to the case as it relates to Lt. Salazar) thereby reducing appellant[']s 115 hearing to a pointless occurrence in violation of 15 CCR § 3320(h). In regards to the (specific act) alleged . . . appellant[']s right to due process was trampled and completely disregarded, for reasons overlooked by the senior hearing officer. . . . 1) The RVR itself was the result of "Retaliation" for a staff complaint submitted by appellant on 1-27-12 for "excessive use of force." Log No. SAC-P-12-00242. Hence the reason the report authored by Sgt. J. Stratton was reported 4 days after the alleged incident was said to have occurred. . . . 2) Upon imposition of the reprisal (initiated by Sgt. Stratton) after becoming aware of appellant[']s "staff complaint" other occurrences determine that Sgt. Stratton thought it was necessary to rally the support of his subordinates to assist in him the full completion of his reprisal for which they obliged via fallaciously written fallacies in the form of a crime/incident packet.

Moreover, in the space provided for plaintiff to describe the action requested, he wrote:

> 1) Appellant request to have a verbal interview so that one can fully provide the remaining set of facts in support of the herein appeal . . . . 2) Appellant request that the actions of the reviewer, relative to the overall appeal (that's supported by logic facts and valid reasoning) result in dismissal. And 3) Should a dismissal be too grand of a disposition for the reviewer to appoint to this injustice

14

> . . . then please allow it to be reissued and reheard for the
> procedural violations expressed herein . . . .

(Pl.'s Opp'n to Defs.' Mot. for Summ. J., Ex. K.)

  On May 10, 2012, Salinas Valley State Prison Appeals Coordinator Mojica rejected this inmate appeal because it was missing necessary supporting documents, including an incident report and stated that plaintiff needed to remove certain written attachments from his grievance. (Pl.'s Opp'n to Defs.' Mot. for Summ. J., Ex. V.) According to plaintiff, he never received Appeals Coordinator Mojica's May 10, 2012 response to his inmate grievance, so on July 5, 2012, plaintiff submitted a CDCR Form 22, expressing concern that he had still not received an answer to his disciplinary appeal. (Id., Ex. W.) CCII Medina responded to plaintiff's Form 22, informing him that prison officials had rejected his appeal and returned it to him. (Id.) CCII Medina also instructed plaintiff that, if he was appealing a CSP-Sacramento RVR, he needed to submit his inmate appeal to CSP-Sacramento. (Id.) According to plaintiff, he then submitted his appeal to CSP-Sacramento as instructed. In response to that inmate appeal, however, plaintiff received a "Summary of Disciplinary Procedures and Inmate Rights" with a hand-written note on it this time telling him to submit his inmate appeal to Salinas Valley State Prison and not CSP-Sacramento. (Id., Ex. V.)

  Plaintiff contends that CSP-Sacramento and Salinas Valley State Prison were playing "ping pong" with his inmate appeal, so he sent a letter/appeal to the Chief of the Inmate Appeals Branch and explained the situation. (Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 18-20.) Nonetheless, the Inmate Appeals Branch rejected plaintiff's letter/appeal and explained that they would not hear any inmate appeals from plaintiff until he had gone through the second level review process. (Id., Ex. X.) Plaintiff then purchased copies of his "RVR packet" because CSP-Sacramento and Salinas Valley State Prison had not returned his paperwork to him and sent a letter to the Warden of Salinas Valley State Prison explaining that he was trying to get a response to his disciplinary appeal. CCII Medina responded to plaintiff's letter and explained that prison officials had rejected his inmate appeal and returned to it plaintiff on May 10, 2012. CCII Medina further explained that his office had no record of plaintiff re-submitting the inmate

appeal. (Id., Ex. Y.) Understandably unsure at that point whether to send his inmate appeal to Salinas Valley State Prison or CSP-Sacramento, plaintiff filed a petition for writ of habeas corpus in the Kern County Superior Court, which the court denied. (Id., Ex. Z.)

As an initial matter, the court finds that plaintiff's appeal log number SVSP-L-12-01686 clearly included sufficient detail to put prison officials on notice of his retaliation claim. As the Ninth Circuit has made clear:

> A grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved. A grievance also need not contain every fact necessary to prove each element of an eventual legal claim. The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation.

Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009). See also Jones, 549 U.S. at 219 (citing Johnson v. Johnson, 385 F.3d 503, 522 (5th Cir. 2004) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance process is not a summons and complaint that initiates adversarial litigation.")).

In addition, as noted above, a court may excuse a prisoner from complying with the exhaustion requirement when prison officials render administrative remedies effectively unavailable even if prison officials did not act in bad faith in doing so. See Sapp, 623 F.3d at 822; Nunez, 591 F.3d at 1224. In this case, although plaintiff submitted his inmate appeal to both Salinas Valley State Prison and CSP-Sacramento, prison officials at each of those institutions rejected plaintiff's inmate appeals and then provided him with conflicting instructions about where to send his inmate appeal for review. Plaintiff then sent a letter/appeal to the Inmate Appeals Branch seeking guidance. Instead of providing guidance, the Inmate Appeals Branch rejected that appeal as out of order. Finally, plaintiff sent a letter to the Warden of Salinas Valley State Prison seeking assistance given the convoluted set of circumstances. Nonetheless, all plaintiff received in response was a letter from CCII Medina merely informing him yet again that his original inmate appeal had been rejected.

/////

Under these circumstances, the undersigned finds that plaintiff should be excused from the exhaustion requirement because he "took reasonable and appropriate steps to exhaust his claim" but was precluded from doing so through no fault of his own. Nunez, 623 F.3d at 823. See also Sapp, 623 F.3d at 826 ("we do not foreclose the possibility that exhaustion might also be excused where repeated rejections of an inmate's grievances at the screening stage give rise to a reasonable and good faith belief that administrative remedies are effectively unavailable."); Penton v. Dickinson, No. 2:11-cv-0518 KJN P, 2012 WL 2620528 at *10 (E.D. Cal. July 5, 2012) ("the conflicting instructions provided in the third screening form gave rise to a reasonable good faith belief that further administrative remedies were effectively unavailable."). That conclusion is particularly supported by the evidence submitted in this case because, as the Ninth Circuit has explained:

> Just as the PLRA's exhaustion requirement gives prisoners the proper incentive to pursue their complaints efficiently, excusing that requirement under the circumstances of this case gives prison officials the same incentive to address prisoners' complaint.

Nunez, 591 F.3d at 1226. See also Sapp, 623 F.3d at 827 ("draconian procedural requirements that would 'trip[] up all but the most skillful prisoners' . . . might also render administrative remedies effectively unavailable so as to excuse a failure to exhaust.").

Accordingly, defendants' motion for summary judgment based on plaintiff's failure to exhaust administrative his remedies with respect to his retaliation claims should be denied.

**CONCLUSION**

In accordance with the above, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment based on plaintiff's failure to exhaust administrative remedies (Doc. No. 36) be granted in part and denied in part as follows:

    a. Defendants' motion for summary judgment on plaintiff's excessive use of force claims be denied;

    b. Defendants' motion for summary judgment on plaintiff's deliberate indifference medical care claims be granted;

/////

          c. Defendants' motion for summary judgment on plaintiff's retaliation claims be denied; and

2. Within thirty days of any order adopting these findings and recommendations, defendants be directed to file an answer in this action.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: November 20, 2014

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:9
mcco1137.57