1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT
9            FOR THE EASTERN DISTRICT OF CALIFORNIA
10

11   DAVON E. McCOY,                       No.  2:12-cv-1137 WBS DB

12              Plaintiff,

13        v.                               FINDINGS AND RECOMMENDATIONS

14   J. STRATTON, et al.,

15              Defendants.

16

17        Plaintiff, a state prisoner proceeding pro se, filed this civil rights action seeking relief

18   under 42 U.S.C. § 1983 alleging excessive force and retaliation against correctional officers who

19   handled his arrival at California State Prison-Sacramento for a temporary transfer.  Before the

20   court is defendants' motion for summary judgment on all claims.  (ECF No. 51.)  For the reasons

21   outlined below, the undersigned respectfully recommends that the district court grant in part and

22   deny in part defendants' motion for summary judgment.

23   I.    **Background**

24        A.    **Procedural**

25        Defendants initially moved for summary judgment based on plaintiff's alleged failure to

26   exhaust administrative remedies.  (ECF No. 36.)  United States District Judge William B. Shubb

27   adopted the findings and recommendations of then-Magistrate Judge Dale A. Drozd in granting in

28   part and denying in part defendants' motion.  (ECF No. 44.)  The court granted defendants the

1

opportunity to file a second motion for summary judgment on the merits.  (ECF No. 77.)

Defendants filed a second motion for summary judgment addressing the merits of plaintiff's

remaining claims.  (ECF No. 51.)  Plaintiff opposes the motion.  (ECF No. 64.)  Defendants filed

a reply brief in support of their motion.  (ECF No. 67.)  Plaintiff then filed an unauthorized sur-

reply.  (ECF No. 68.)  Although plaintiff does not have the right to file a sur-reply under the

Federal Rules of Civil Procedure or the Local Rules and did not seek leave of court to file one,

the court will consider it given plaintiff's pro se status and the absence of any objection by

defendants.

### B. Factual

#### 1. Statement of Undisputed Facts

For purposes of the instant motion for summary judgment, the court finds the following

facts undisputed.

Plaintiff, a California Department of Corrections and Rehabilitation (CDCR) inmate, was

temporarily housed at California State Prison-Sacramento (CSP-SAC) with out to court status

from January 25, 2012 to February 8, 2012.  (ECF No. 54-2 at 6.)

On January 25, 2012 defendant Stratton worked as a correctional sergeant in the CSP-

SAC administrative segregation unit (ASU) and he was providing coverage as an escort officer

for the Receiving and Release (R&R) department.  (ECF No. 55 at 2.)  Defendant Epp was

assigned as a floor officer in Facility A, Building 5 at CSP-SAC and he was providing coverage

as an escort officer in the R&R.  (ECF No. 57 at 1.)  Defendant Barnes was assigned as a floor

officer in Facility A, Building 6 and was providing escort coverage in the R&R.  (ECF No. 58 at

2.)  Defendant Dingfelder was assigned as a correctional officer in the CSP-SAC R&R. (ECF No.

56 at 1.)  Defendant Hughes was an escort officer in the CSP-SAC ASU and he was providing

escort coverage in the R&R.  (ECF No. 59 at 2.)  Defendant Sweeney was assigned as a floor

officer in Facility A, Building at CSP-SAC.  (ECF No. 60 at 2.)

Plaintiff's leg was in a cast at the time (ECF Nos. 54-3 at 7; 64 at 133) and he typically

used a cane to assist him walking (ECF No. 64 at 125).  Plaintiff used his cane to enter CSP-SAC

but it was taken from him upon entering R&R so that it could be assessed by the guards there; the

2

1   guards held onto the cane while plaintiff waited in a holding cell in R&R.  (Id. at 125-26.)  The

2   parties dispute whether the cane was given back to plaintiff; the court will address that dispute

3   below in relation to the other dispute of whether the cane was used to strike defendant Stratton.

4          At approximately 6:55 PM on January 25, 2012, plaintiff was escorted from the R&R to

5   the Facility A, Psychiatric Services Unit (PSU).  (ECF No. 55 at 2.)  Plaintiff was initially

6   assigned to the ASU when he arrived at CSP-SAC, but plaintiff was redirected to the PSU

7   because the ASU was full.  (Id.)  As the escort began, plaintiff complained about being housed in

8   PSU, alleging that he could suffer a seizure if he was placed in a single-cell unit in PSU without

9   his seizure medication.  (Id.; ECF No. 54-3 at 6.)  Plaintiff's left arm was held by defendant

10  Stratton and his right arm was held by defendant Epp while he was escorted.  (ECF No. 55 at 2.)

11  Plaintiff was also restrained in leg and waist restraints. (Id.)  Plaintiff demanded to be transported

12  by wheelchair because of difficulty walking, but his request was denied.  (ECF No. 64 at 129.)

13         While the cause is disputed, the parties agree that plaintiff continued to argue and did not

14  move at the pace that defendants Stratton and Epp demanded.  (ECF Nos. 55 at 2; 64 at 133-34.)

15  Soon after the escort began, defendants Stratton and Epp pushed plaintiff face-first against a wall

16  and then drove him to the floor.  (ECF No. 55 at 2-3; ECF No. 64 at 134-35.)  Defendants

17  Stratton and Epp then held plaintiff on the ground using their knees and hands while an alarm was

18  sounded.  (ECF Nos. 55 at 3; 57 at 2; 64 at 135.)   Defendant Barnes, observing the incident, then

19  joined in placing his knee on plaintiff's lower back.  (ECF No. 58 at 2.)

20         Other staff, responding to the alarm and to the instructions of defendant Stratton, delivered

21  a stretcher and a gurney.  (Id.)  Defendants Stratton, Barnes and Epp placed plaintiff on the

22  stretcher.  Plaintiff alleges that he was lifted by defendants Stratton, Barnes, and Epp as well as

23  other guards, and then driven to the ground once more before plaintiff was placed on the gurney.

24  Defendants dispute this allegation.  Defendants also dispute plaintiff's allegation that he was

25  choked at one point and that defendants struck plaintiff while he was being held down.  A "spit

26  net" was placed over plaintiff's head.

27         On January 27, 2012, plaintiff filed a prisoner complaint (appeal number SVSP-12-01686)

28  alleging excessive use of force by a corrections officer.  (ECF No. 64-1 at 146.)  Plaintiff

1    acknowledges that this prisoner complaint did not address retaliation or allege that defendants

2    placed plaintiff in an inoperable cell (i.e., a cell that purportedly lacked running water) after the

3    use of force incident.  (ECF No. 64 at 43-44, 55.)  None of plaintiff's prisoner complaints claimed

4    that he had been placed in an inoperable cell by defendants.

5            On February 1, 2012, defendant Stratton filed a "Rules Violation Report" (RVR), which

6    charged plaintiff with battery on a corrections officer, alleging that plaintiff hit him in the leg with

7    his cane.  (ECF No. 64-1 at 34.)

8            A February 2, 2012 doctor visit indicates that plaintiff arrived by wheelchair and had

9    tongue bite.  (ECF No. 64-1 at 107.)

10           In 2012, an RVR for "battery on a peace officer resulting in the use of force" was a SHU-

11   able (Security Housing Unit) offense.  (ECF No. 55 at 4.)  Lieutenant Heintschel reassigned

12   plaintiff to ASU on February 3, 2012 based on the RVR.  (ECF Nos. 55 at 4; 64-1 at 150.)

13           On March 22, 2013, plaintiff filed a petition for writ of habeas corpus, In Re Davon

14   McCoy, Case No. HC 013527A, in the Superior Court of the State of California, County of Kern.

15   (ECF No. 53-1.)  In this petition, plaintiff complained about his treatment at CSP-SAC after his

16   altercation with prison staff in R&R on January 25, 2012.  (Id. at 4-5.)  Plaintiff also complained

17   that defendant Stratton's issuance of an RVR for battery on a peace officer was false and

18   retaliatory.  (Id. at 4-5.)  Lastly, he complained that his February 3, 2012 retention in the ASU

19   was retaliatory and motivated by his complaints regarding the January 25, 2012 altercation in the

20   R&R. (Id.)  On June 3, 2013, the state court issued an opinion denying plaintiff's petition for writ

21   of habeas corpus.  (Id.)

22                   **2.    Dispute Concerning Plaintiff's Cane**

23           The parties dispute what transpired immediately before the use of force against plaintiff.

24   Defendants contend that plaintiff turned around to face the two officers escorting him and struck

25   defendant Stratton in the leg with his cane.  (ECF No. 55 at 2.)  Plaintiff claims that he did not

26   receive his cane back from R&R (Id. at 22; 125-26) and that the use of force was not preceded by

27   him hitting defendant Stratton with his cane (Id. at 134-35); however, the court cannot credit his

28   declaration on that point.

                                          4

1    Where opposing parties tell two different stories, one of which is "blatantly contradicted"

2    by the record so that no reasonable jury could believe it, the court should not adopt that version of

3    the facts.  Scott v. Harris, 550 U.S. 372, 380 (2007).  Plaintiff's contentions that his cane was

4    never returned to him and that he did not strike defendant Stratton are blatantly contradicted by

5    the record.  The only support for plaintiff's position is his own deposition testimony.  (ECF No.

6    64 at 125-26.)  "When the non-moving party relies on its own affidavits to oppose summary

7    judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue

8    of material fact."  Hansen v. United States, 7 F.3d 137, 138 (9th Cir. 1993).

9    Plaintiff's testimony that he did not receive his cane back is contradicted by the affidavits

10   of the witnesses present (ECF Nos. 55 at 2; 57 at 2; 58 at 3), as well as by contemporaneous

11   medical reports of both plaintiff's and defendant Stratton's injuries (ECF No. 39-1 at 23-24).

12   Defendants Stratton and Epp who were escorting plaintiff at the time both filed declarations that

13   plaintiff turned around and struck defendant Stratton with his cane.  (ECF Nos. 55 at 2; 57 at 2.)

14   Defendant Barnes who was providing coverage as an escort officer in R&R at the time also

15   submitted an affidavit stating that he witnessed plaintiff strike defendant Stratton with his cane.

16   (ECF No. 58 at 2.)  While normally such "contradiction[s] present[] a classic swearing match,

17   which is the stuff of which jury trials are made[,]"  Feliciano v. City of Miami Beach, 707 F.3d

18   1244, 1253 (11th Cir. 2013), the contemporaneous medical reports concerning defendant Stratton

19   and plaintiff blatantly contradict plaintiff's contentions regarding the cane.

20   Plaintiff was brought to nurse Kevin Grinde on the gurney at 7:10 PM, immediately after

21   the use of force incident.  Nurse Grinde filled out a "Medical Report of Injury or Unusual

22   Occurrence" at 7:40 PM, documenting plaintiff's injuries.  (ECF No. 39-1 at 24.)  One section of

23   the standardized form asks for a "brief statement in subject's words of the circumstances of the

24   injury[.]"  (Id.)  Here, nurse Grinde quotes plaintiff as telling him: "I tried to hit [defendant

25   Stratton] with my cane."  (Id.)

26   Another "Medical Report of Injury or Unusual Occurrence" was filed by nurse Grinde on

27   at 7:55 PM concerning an injury sustained by defendant Stratton.  (Id. at 23.)  The medical report

28   describes a "bruise and reddened area on the lateral aspect of [defendant Stratton's] left lower

1    leg[.]"  (Id.)  In the section asking for a "brief statement in subject's words of the circumstances

2    of the injury[,]" nurse Grinde quotes defendant Stratton telling him: "While escorting [plaintiff],

3    he hit me with his cane on the left leg."  (Id.)

4           So, while plaintiff submits his own sworn declaration and deposition testimony, these

5    statements are conclusory, self-serving, and blatantly contradicted by all other available evidence.

6    "A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is

7    insufficient to create a genuine issue of material fact."  F.T.C. v. Publishing Clearing House, Inc.,

8    104 F.3d 1168, 1171 (9th Cir. 1997).  Thus, the court cannot credit these statements as creating a

9    genuine issue of fact concerning plaintiff's possession and use of a cane against defendant

10   Stratton.

11   **II.     <u>Summary Judgment Legal Standard</u>**

12          Summary judgment is appropriate when it is demonstrated that the standard set forth in

13   Federal Rule of Civil procedure 56 is met.  "The court shall grant summary judgment if the

14   movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

15   judgment as a matter of law."  Fed. R. Civ. P. 56(a).

16          Under summary judgment practice, the moving party always bears the initial

17   responsibility of informing the district court of the basis for its motion, and identifying those

18   portions of "the pleadings, depositions, answers to interrogatories, and admissions on file,

19   together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue

20   of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed.

21   R. Civ. P. 56(c)). "Where the nonmoving party bears the burden of proof at trial, the moving

22   party need only prove that there is an absence of evidence to support the non-moving party's

23   case."  Nursing Home Pension Fund, Local 144 v. Oracle Corp. ("In re Oracle Corp. Sec. Litig."),

24   627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P.

25   56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have

26   the trial burden of production may rely on a showing that a party who does have the trial burden

27   cannot produce admissible evidence to carry its burden as to the fact").  Indeed, summary

28   judgment should be entered, after adequate time for discovery and upon motion, against a party

1  who fails to make a showing sufficient to establish the existence of an element essential to that

2  party's case, and on which that party will bear the burden of proof at trial.  Celotex Corp., 477

3  U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving

4  party's case necessarily renders all other facts immaterial."  Id. at 323.

5         Consequently, if the moving party meets its initial responsibility, the burden then shifts to

6  the opposing party to establish that a genuine issue as to any material fact actually exists.  See

7  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

8  establish the existence of such a factual dispute, the opposing party may not rely upon the

9  allegations or denials of its pleadings, but is required to tender evidence of specific facts in the

10  form of affidavits, and/or admissible discovery material in support of its contention that such a

11  dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n. 11.  The opposing party

12  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

13  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

14  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

15  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return

16  a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436

17  (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d

18  1564, 1575 (9th Cir. 1990).

19         In the endeavor to establish the existence of a factual dispute, the opposing party need not

20  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

21  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

22  trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce

23  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

24  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

25  amendments).

26         In resolving a summary judgment motion, the court examines the pleadings, depositions,

27  answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ.

28  P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at 255.

All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 586 (citation omitted).

On a motion for summary judgment, it is inappropriate for the court to weigh evidence or resolve competing inferences.  "In ruling on a motion for summary judgment, the court must leave '[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts' to the jury."  Foster v. Metropolitan Life Ins. Co., 243 F. App'x 208, 210 (9th Cir. 2007) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).  In addition, there is no "prohibition against considering all affidavits that are self-serving." Jones v. Tozzi, 2007 WL 433116 at * 12 (E.D.Cal. 2007) (explaining that the Ninth Circuit "merely permits a court to disregard self-serving affidavits which are contradicted by the plaintiff's own prior statements and other forms of undisputed evidence.").  Finally, an omission of a fact is not the same as the contradiction of a fact.

III.    **Legal Analysis**

Defendants move for summary judgment on the following grounds: (1) The Eighth Amendment claims against defendants Stratton, Epp, and Barnes fail to raise an issue of material fact  because the force used by those defendants was minimal and used in an effort to restore order and gain control of plaintiff; (2) The Eighth Amendment claims against defendants Dingfelder, Sweeney, and Hughes fail to raise an issue of material fact because there is no evidence that these defendants were involved in the altercation with plaintiff; (3) Plaintiff fails to raise an issue of material fact concerning his retaliation claim against defendant Stratton; (4) Plaintiff failed to exhaust administrative remedies against defendants Barnes, Wells, Chavez,

1   Martinez, and Slaughter concerning his alleged placement in an inoperable cell; (5) Plaintiff's

2   retaliation claim against defendant Stratton is barred by claim preclusion because it was litigated

3   in a state habeas petition filed by plaintiff; and (6) Defendants are entitled to qualified immunity.

4       The court will address defendants' merits arguments concerning the Eighth Amendment

5   claims; the failure to exhaust administrative remedies argument concerning defendants Barnes,

6   Wells, Chavez, Martinez, and Slaughter for the alleged placement in an inoperable cell; and

7   defendant Stratton's claim preclusion argument.  The court will also address defendants' qualified

8   immunity arguments.  Furthermore, it is not necessary for the court to reach the merits of the

9   retaliation claim against defendant Stratton because it is barred by claim preclusion.

10      **A.**      **Eighth Amendment Claim for Use of Excessive Force**

11          **1.**      **Use of Force Legal Standard**

12      The Eighth Amendment prohibits the infliction of "cruel and unusual punishments."  U.S.

13  Const. amend. VIII.  The "unnecessary and wanton infliction of pain" constitutes cruel and

14  unusual punishment prohibited by the United States Constitution.  Whitley v. Albers, 475 U.S.

15  312, 319 (1986).  Neither accident nor negligence constitutes cruel and unusual punishment, as

16  "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the

17  conduct prohibited by the Cruel and Unusual Punishments Clause."  Id.

18      What is needed to show unnecessary and wanton infliction of pain "varies according to

19  the nature of the alleged constitutional violation."  Hudson v. McMillian, 503 U.S. 1, 5 (1992)

20  (citing Whitley, 475 U.S. at 320).  To prevail on an Eighth Amendment claim the plaintiff must

21  show that objectively he suffered a "sufficiently serious" deprivation.  Farmer v. Brennan, 511

22  U.S. 825, 834 (1994); Wilson v. Seiter, 501 U.S. 294, 298–99 (1991).  The plaintiff must also

23  show that subjectively each defendant had a culpable state of mind in allowing or causing the

24  plaintiff's deprivation to occur.  Farmer, 511 U.S. at 834.

25      It is well established that "whenever prison officials stand accused of using excessive

26  physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry

27  is that set out in Whitley, i.e., whether force was applied in a good-faith effort to maintain or

28  restore discipline, or maliciously and sadistically to cause harm."  Hudson, 503 U.S. at 6–7.  A

prisoner is not required to show a "significant injury" to establish that he suffered a sufficiently serious constitutional deprivation.  Id. at 9–10.

The Ninth Circuit has relied on the Hudson factors in determining whether an officer's application of force was applied in a good faith effort to restore discipline.  Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).  These factors are: 1) the extent of the injury suffered by an inmate; 2) the need for application of force; 3) the relationship between that need and the amount of force used; 4) the threat reasonably perceived by the responsible officials; and 5) any efforts made to temper the severity of a forceful response.  Id.  From these factors, inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.  "Equally relevant are such factors as the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them, and any efforts made to temper the severity of a forceful response." Whitley, 475 U .S. at 321.

Thus, there is no Eighth Amendment violation if "force was applied in a good-faith effort to maintain or restore discipline."  Hudson, 503 U.S. at 7.  Courts accord wide-ranging deference to prison administrators in the exercise of policies and practices that in their judgment are needed to preserve internal security, safety and discipline.  Whitley, 475 U.S. at 322–23. The infliction of pain in the course of implementing prison security measures does not amount to cruel and unusual punishment even though it may appear, in hindsight, the degree of force was unreasonable.  Id. at 319.  An allegation of cruel and unusual punishment should proceed to trial only if the evidence supports a reliable inference that the prison official intended to inflict pain.  Id. at 322.

## 2.   Use of Force Analysis for Defendants Barnes, Epp, Stratton, Dingfelder, Sweeney and Hughes

Defendants Barnes, Epp and Stratton seek summary judgment on the ground that they used minimal force in an effort to restore order and gain control of plaintiff.  Defendants Dingfelder, Sweeney, and Hughes seek summary judgment on the ground that there is no evidence that they were involved in the altercation with plaintiff.  While defendants' motion

makes separate arguments for these two groups of plaintiffs, it is necessary to include defendants Dingfelder, Sweeney, and Hughes in the analysis of the arguments made on behalf of defendants Barnes, Epp, and Stratton.  However, the court will separately address the specific argument that defendants Dingfelder, Sweeney, and Hughes were not involved in the altercation.

Plaintiff alleges that defendants Epp and Stratton pushed him face-first into a cage, then, with the assistance of defendants Barnes, Hughes, Sweeney, and Dingfelder, hoisted him into the air by his waist restraints and body-slammed him face-first into the concrete.  Plaintiff further claims that defendants Barnes, Hughes, Sweeney, Dingfelder, Epp, and Stratton kicked, punched and choked him while falsely yelling "stop resisting."  (ECF No. 64 at 135-37.)  Eventually, plaintiff lost consciousness and awoke lying on a stretcher with a spit net mask over his face.  Plaintiff alleges he awoke in intense pain and was carried to the emergency medical unit where he was seen by nurse Grinde.  (Id.)  During the incident, plaintiff was restrained at his legs, waist and hands.  (ECF No. 64 at 135.)

The court will analyze the Hudson factors in turn below.

### a. Extent of Injury Suffered by Inmate

The "extent of injury" suffered by an inmate is "'one factor that may suggest "whether the use of force could plausibly have been thought necessary" in a particular situation.'"  Wilkins v Gaddy, 559 U.S. 34, 37 (2010) (quoting Hudson, 503 U.S. at 7, in turn quoting Whitley, 475 U.S. at 321).  "The extent of injury may also provide some indication of the amount of force applied."  Wilkins, 559 U.S. at 37.  The Eighth Amendment prohibits the "'unnecessary and wanton infliction of pain.'"  Hudson, 503 U.S. at 7 (quoting Whitley, 475 U.S. at 319).

As the United States Supreme Court held in Hudson, and reiterated in Wilkins, "[t]he 'core judicial inquiry' [on an excessive force claim] was not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' [Citation omitted.] 'When prison officials maliciously and sadistically use force to cause harm,' the Court recognized, 'contemporary standards of decency are always violated . . . whether or not significant injury is evident.'"  Wilkins, 559 U.S. at 37 (quoting Hudson, 503 U.S. at 9).  "Injury and force . . . are

1  only imperfectly correlated, and it is the latter that ultimately counts.  An inmate who is

2  gratuitously beaten by guards does not lose his ability to purse an excessive claim merely because

3  he has the good fortune to escape without serious injury."  Wilkins, 509 U.S. at 38.  What is at

4  issue is the relationship between the need for force and the amount of force applied.

5         Plaintiff presented evidence that he suffered pain in neck, legs, wrist, and shoulder.  (ECF

6  No. 39-1 at 24.)  Additionally, at a follow-up visit with a nurse the day after the incident, plaintiff

7  claims to have received band-aids for his chin, which he says was split open when he was forced

8  to the ground.  (ECF No. 64 at 137-38.)  Medical staff also found it necessary to x-ray plaintiff's

9  shoulder due to his complaints.  (Id.)  Furthermore, plaintiff had a serious preexisting leg injury

10  that required him to be in a cast.  (ECF Nos. 54-3 at 7; 64 at 133.)  Plaintiff declares that this leg

11  injury was exacerbated during the incident.  (ECF No. 64 at 146.)

12         In the court's view, this evidence is sufficient to support a finding that plaintiff suffered

13  several injuries -- some new and some exacerbations of preexisting conditions -- that caused

14  potentially significant pain to plaintiff.  While defendants contend that the injuries were minimal

15  based upon nurse Grinde's report (ECF No. 39-1 at 24), plaintiff's testimony concerning the

16  extent of his pain and suffering in combination with the report recording how the injuries

17  outwardly appeared is sufficient to raise a triable issue of fact as to whether, and to what extent,

18  defendants caused plaintiff harm.  To conclude, as defendants do here, "that the absence of some

19  arbitrary quantity of injury requires" automatic granting of summary judgment on an excessive

20  force claim "improperly bypasses [the] core inquiry."  Wilkins, 559 U.S. at 39.

21                    **b.      Need for Application of Force**

22         There is no doubt that initially plaintiff posed a significant risk to prison staff when he

23  swung his cane and struck defendant Stratton.  Thus, there was a legitimate need for the

24  application of **some** force by defendants in response.  Specifically, disarming plaintiff of his cane

25  and gaining physical control over his body after he turned around to face defendants would be

26  reasonable actions under the circumstances.  In this instance, defendants Epp and Stratton did

27  grab hold of plaintiff and push him into a wall face-first.  (ECF No. 55 at 2-3; ECF No. 64 at 134-

28  35.)

However, the facts are disputed as to what exactly occurred after plaintiff struck defendant Stratton.  In particular, the record is not clear as to whether plaintiff continued resisting defendants' orders.  Nor is it readily apparent how much plaintiff was physically capable of resisting defendants given his preexisting leg injury and the restraints around his arms, legs and waist.  When plaintiff was seen by a physician in the week after the incident, he arrived in a wheelchair because of his leg injury, which limited his mobility.  (ECF No. 64-1 at 107.)  This supports the inference that plaintiff's resistance to walking with defendants Epp and Stratton was caused not by conscious disregard to their instructions, but, rather, by plaintiff's inherent physical limitations.

The amount of force used is here disputed.  Defendants claim to have used only as much as was necessary to control plaintiff.  They also assert that plaintiff resisted their efforts at control while he was pushed face-first against a wall, necessitating them throwing him to the ground. Defendants claim plaintiff continued to resist on the ground as well, twisting his body from left to right in an attempt to prevent defendants from gaining control, necessitating more efforts to control him.  (ECF No. 51 at 17.)  Plaintiff denies this version of events, asserting that he was compliant when grabbed by defendants and did not make resistant movements when laying prone on the ground.  (ECF No. 64 at 135-37.)  Additionally, it is undisputed that plaintiff was in physical restraints and wearing a cast on one leg at the time, necessitating the use of a cane and/or a wheelchair at various times for mobility.

So, the undersigned concludes that the initial need for force is undisputed; plaintiff struck defendant Stratton with his cane, necessitating a forceful response for the safety of the correctional officers.  Nonetheless, there is a genuine dispute of fact as to whether there was a continued need for force once defendants Epp and Stratton grabbed hold of plaintiff and pushed him against the wall (and as discussed in the relevant section below, there is further dispute as to the amount of force used in pushing plaintiff against the wall and the necessity for the amount of force used).

////

////

1

          **c.**       **Relationship between Need and Amount of Force Used**

2          In this instance, the amount of force used is disputed.  Defendants claim to have used only

3 as much as was necessary to control plaintiff.  They also assert that plaintiff resisted their efforts

4 at control while he was pushed face-first against a wall, necessitating them throwing him to the

5 ground.  Defendants claim plaintiff continued to resist on the ground as well, necessitating more

6 efforts to control him.  In addition to citing to <u>Hansen</u> concerning plaintiff's possession and use of

7 the cane, defendants also contend that it should apply to the rest of plaintiff's testimony.

8 Particularly, defendants assert the court should discredit plaintiff's claims that he did not resist

9 efforts to control him and that defendants wantonly struck him and treated him roughly while he

10 was on the ground.  Defendants, citing their own consistent declarations on this point, argue that

11 "[w]hen the nonmoving party relies only on its own affidavits to oppose summary judgment, it

12 cannot rely on conclusory allegations unsupported by factual data to create an issue of material

13 fact."  <u>Hansen</u>, 7 F.3d 137, 138 (9th Cir. 1993).

14          While the court relies in part on <u>Hansen</u> concerning plaintiff's possession and use of a

15 cane against defendant Stratton (<u>see</u> supra, pp. 4-6), it is only does so in a limited capacity.  More

16 importantly, the court relies on <u>Scott</u>, in which the Supreme Court ruled that where opposing

17 parties tell two different stories, one of which is "blatantly contradicted" by the record so that no

18 reasonable jury could believe it, the court should not adopt that version of the facts.  550 U.S. at

19 380.  Concerning plaintiff's possession and use of a cane to strike defendant Stratton, the

20 affidavits of several witnesses and contemporaneous medical reports -- including one quoting

21 plaintiff himself -- blatantly contradicted plaintiff's self-serving statements to the contrary.  Thus,

22 for that reason, the court rejected plaintiff's faulty unfounded contention.

23          However, the court cannot rely upon <u>Hansen</u> to reject plaintiff's factual allegations

24 concerning the extent and amount of force used against plaintiff.  The language quoted from

25 <u>Hansen</u> cites to <u>United States v. 1 Parcel of Real Property, Lot 4, Block 5 of Eaton Acres</u> ("<u>Eaton</u>

26 <u>Acres</u>"), 904 F.2d 487 (9th Cir. 1990), which actually supports plaintiff's position concerning the

27 extent of force used.

28 ////

In Eaton Acres, the Ninth Circuit unequivocally stated that it could not "reject claimant's evidence simply because it consists entirely of the [claimant's] self-serving testimony." 904 F.2d at 492. There, the claimant "offered a detailed declaration painting a picture entirely different from that described by the government." Id. And while the Ninth Circuit found the evidence to be "hardly overwhelming," it nonetheless concluded that "a rational trier of fact could find it to be credible. Clearly, it would make a world of difference which version of events the trier of fact believes." Id. To be sure, a specific portion of plaintiff's testimony is blatantly contradicted by the record as demonstrated above. However, the court cannot impute that contradiction on the rest of plaintiff's testimony. Nor can the undersigned use that inaccurate portion of testimony to assess plaintiff's credibility at the summary judgment stage.

Similar to the situation in Eaton Acres, plaintiff's description of the need for and amount of force used paints a different picture than that of defendants. Plaintiff's description of the incident offers a clear, first-hand account that counters defendants' narrative of the need to continue to use force on plaintiff and the amount of force actually applied (i.e., whether plaintiff was actually beaten and roughed up while on the ground). Thus, as in Eaton Acres, "it would make a world of difference which version of events the trier of fact believes." 904 F.2d at 492.

Defendants justify their use of force by claiming that it was reasonable in light of plaintiff's loud, violent struggle resisting their efforts to move him to his cell. Plaintiff contends that he did not continue to resist the officers once they established a hold on him and was not loud and argumentative. If the court were to grant summary judgment for defendants here, it would usurp the role of the jury in judging whose version of the events is more believable.

### d.    Threat Reasonably Perceived by Officials

Taking plaintiff's allegations as true, if the jury finds plaintiff was compliant, laying prone on the ground at the time defendants lifted him, slammed him on the ground, and struck him, plaintiff's compliance would demonstrate that he did not pose a threat to the safety of defendants or others. Vlasich v. Reynoso, 117 F. Appx. 568, 569 (9th Cir. 2004) (finding "a reasonable inference of wanton infliction of pain in violation of the Eighth Amendment" at the motion to dismiss phase where officers still administered pepper spray after compliance rather than

15

administering pepper spray in order to gain compliance); <u>Carr v. Her</u>, No. 2:09–cv–0826 GEB KJN , 2012 WL 259457, at *8-9 (E.D. Cal. Jan. 25, 2012 (finding the same as <u>Vlasich</u>, but at the summary judgment stage).  If the jury finds plaintiff was prone on the ground and compliant, the use of excessive force in such circumstances was unnecessary and wanton, and would violate plaintiff's constitutional right to be free from excessive force.

As expressed several times above, there is no dispute as to whether plaintiff struck defendant Stratton with his cane to initiate this series of events.  But here is a genuine dispute as to whether force was required under the circumstances after plaintiff claims to have been grabbed and placed under control by defendants.  Defendants declare that pinning plaintiff to the ground was necessary because he presented a real security risk.  Thus, in defendants' view, their actions were taken solely to ensure institutional safety.  Plaintiff, however, paints a different picture.  Plaintiff asserts that he was not twisting, turning, yelling, and trying to free himself from the escort as defendants' claim.  While the court may find plaintiff's self-serving testimony on this point to be "hardly overwhelming," a rational trier of fact could find it credible, as well as not find defendants' testimony credible.

### e.        Efforts to Temper Severity of Forceful Response

The facts on the record are disputed concerning this factor.  From plaintiff's perspective, the forceful response was only exacerbated once it began -- what began as two officers forcefully pulling plaintiff to his cell was escalated to him being shoved into a wall, lifted into the air and body-slammed to the ground, then assaulted by at least six officers as he lay prone and compliant.  Rightfully, defendants argue that plaintiff initially provoked the incident himself through his striking of defendant Stratton with his cane.  Thus, defendants can claim that the escalation from pulling plaintiff along by his arms to shoving him against the wall to restrain him was justified.

Concerning the actions taken thereafter (namely, lifting plaintiff and forcing him to the ground and holding him there), defendants justify them by claiming that plaintiff was continually resisting their efforts to control him.  This is factually disputed, however, by plaintiff's declaration that he was not resisting and no efforts were made to temper the forceful response.

////

1
                  **f.**      **Conclusion**

2
        Based upon the foregoing analysis, the undersigned concludes that defendants have not

3 met their burden concerning the excessive force claims.  The factual disputes outlined above must

4 be resolved by the jury, which could find in plaintiff's favor based on the evidence presented.

5
                  **3.**      **Use of Force Analysis for Defendants Dingfelder, Sweeney, and**

6
                                  **Hughes**

7
        Defendants Dingfelder, Sweeney, and Hughes separately argue that there is no evidence

8 that they were involved at all in the altercation with plaintiff.  These defendants claim that

9 plaintiff's account of their involvement is completely unsupported and contradicted by their own

10 declarations.  (ECF No. 51 at 19-20.)  As with the above argument, defendants assert that the

11 court must reject plaintiff's testimony as "a conclusory, self-serving [statement] lacking detailed

12 facts and any supporting evidence [that] is insufficient to create a genuine issue of material fact."

13 United States v. $133,420.00 in U.S. Currency, 642 F.3d 629, 638-39 (9th Cir. 2012).

14
        However, unlike the portion of plaintiff's testimony concerning his use of the cane, the

15 allegations that defendants Dingfelder, Sweeney, and Hughes were involved in the altercation are

16 not blatantly contradicted by the record.  Rather, these allegations are contradicted only by the

17 declarations of defendants themselves.  Thus, if defendants' argument were to be applied to all

18 "conclusory, self-serving affidavits," then it would equally apply to defendants' own statements

19 concerning their whereabouts during the altercation.  Other than their own affidavits, these

20 defendants do not present any supporting evidence that they were not involved in the incident.  If

21 the court were to grant summary judgment for defendants on this basis (i.e., determining that

22 defendants' affidavits are more credible than plaintiff's testimony), it would usurp the role of the

23 jury.

24
          **B.**      **Failure to Exhaust Administrative Remedies Concerning Claims for**

25
                  **Deliberate Indifference and Retaliation against Defendants Barnes, Wells,**

26
                  **Chavez, Martinez, and Slaughter**

27
        By the Prison Litigation Reform Act of 1995 (PLRA), Congress amended 42 U.S.C. §

28 1997e to provide that "[n]o action shall be brought with respect to prison conditions under section

17

1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).

The United States Supreme Court has ruled that exhaustion of prison administrative procedures is mandated regardless of the relief offered through such procedures.  See Booth v. Churner, 532 U.S. 731, 741 (2001). The Supreme Court has also cautioned against reading futility or other exceptions into the statutory exhaustion requirement.  See id. at 741 n.6. Moreover, because proper exhaustion is necessary, a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal.  See Woodford v. Ngo, 548 U.S. 81, 90-93 (2006).  "[T]o properly exhaust administrative remedies prisoners 'must complete the administrative review process in accordance with the applicable procedural rules,' [ ] - rules that are defined not by the PLRA, but by the prison grievance process itself."  Jones v. Bock, 549 U.S. 199, 218 (2007) (quoting Woodford, 548 U.S. at 88).  See also Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion.'").

In California, prisoners may appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare."  Cal. Code Regs. tit. 15, § 3084.1(a). Most appeals progress through three levels of review.  See id. § 3084.7.  The third level of review constitutes the decision of the Secretary of the California Department of Corrections and Rehabilitation and exhausts a prisoner's administrative remedies.  See id. § 3084.7(d)(3).  A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available to him.  Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002).

A prisoner may be excused from complying with the PLRA's exhaustion requirement if he establishes that the existing administrative remedies were effectively unavailable to him.  See

18

1   Albino v. Baca, 747 F.3d 1162, 1172-73 (9th Cir. 2014).  For example, where prison officials

2   improperly screen out inmate grievances, they can render administrative remedies effectively

3   unavailable.  See Sapp v. Kimbrell, 623 F.3d 813, 823 (9th Cir. 2010).  In such a case, "the

4   inmate cannot pursue the necessary sequence of appeals[.]"  Id.  See also Nunez v. Duncan, 591

5   F.3d 1217, 1226 (9th Cir. 2010) (excusing an inmate's failure to exhaust because he was

6   precluded from exhausting his administrative remedies by a warden's mistaken instruction to him

7   that a particular unavailable document was needed for him to pursue his inmate appeal); Marella,

8   568 F.3d 1024 (excusing an inmate's failure to exhaust because he did not have access to the

9   necessary grievance forms to timely file his grievance).

10          The PLRA exhaustion requirement is not jurisdictional but rather creates an affirmative

11   defense that defendants must plead and prove.  See Jones, 549 U.S. at 216 ("[I]nmates are not

12   required to specially plead or demonstrate exhaustion in their complaints."); Albino, 747 F.3d at

13   1168.  A defendant may move for dismissal under Federal Rule of Civil Procedure 12(b)(6) "[i]n

14   the rare event" that a prisoner's failure to exhaust is clear on the face of the complaint.  Albino,

15   747 F.3d at 1168 & 1169.  More typically, defendants are required to move for summary

16   judgment under Federal Rule of Civil Procedure 56 and produce probative evidence that proves a

17   prisoner's failure to exhaust.  See id. at 1166.  If the undisputed evidence viewed in the light most

18   favorable to the prisoner demonstrates a failure to exhaust, the court should grant defendant's

19   motion for summary judgment.  On the other hand, if there are material facts in dispute, the court

20   should deny defendant's motion summary judgment.  See id.

21          Plaintiff filed inmate appeal SVSP-12-01686 on April 30, 2012, alleging that defendant

22   Stratton retaliated against him by issuing a false RVR.  (ECF No. 64-1 at 146.)  In the previous

23   motion for summary judgment, defendants argued that plaintiff failed to exhaust his

24   administrative remedies for the retaliation claim against defendant Stratton because SVSP-12-

25   01686 was rejected for failure to include necessary documents and returned to plaintiff.  (ECF

26   No. 36 at 11-12.)  The court excused plaintiff's failure to exhaust SVSP-12-01686, though,

27   finding that plaintiff took reasonable steps to exhaust his claim under the circumstances.  (ECF

28   Nos. 43; 44.)  Specifically, the court found that SVSP-12-01686 included sufficient detail to put

1    prison officials on notice of his retaliation claim.  (ECF No. 43 at 16.)

2         Plaintiff's appeal SVSP-12-01686 indisputably only concerns the retaliation claim against

3    defendant Stratton, alleging that he issued the RVR as a reprisal for plaintiff's excessive force

4    complaint.  (ECF No. 64-1 at 146.)  Defendants Barnes, Wells, Chavez, Martinez, and Slaughter

5    are not mentioned in SVSP-12-01686, nor are there allegations that plaintiff was placed in an

6    inoperable cell as retaliation for his excessive force complaint.  (Id.)  The Ninth Circuit has made

7    clear:

8            A grievance need not include legal terminology or legal theories

9            unless they are in some way needed to provide notice of the harm
             being grieved. A grievance also need not contain every fact

10           necessary to prove each element of an eventual legal claim. The
             primary purpose of a grievance is to alert the prison to a problem

11           and facilitate its resolution, not to lay groundwork for litigation.

12

13   Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009).  See also Jones, 549 U.S. at 219 (citing

14   Johnson v. Johnson, 385 F.3d 503, 522 (5th Cir. 2004) ("We are mindful that the primary purpose

15   of a grievance is to alert prison officials to a problem, not to provide personal notice to a

16   particular official that he may be sued; the grievance process is not a summons and complaint that

17   initiates adversarial litigation.")).

18        Plaintiff admits that SVSP-12-01686 does not address the actions of defendants Barnes,

19   Wells, Chavez, Martinez, and Slaughter on its face.  (ECF No. 64 at 55.)  He contends, however,

20   that he only did not include these defendants and their alleged acts of retaliation because there

21   was not sufficient room on the form.  (Id.)  This explanation is insufficient.  As the purpose of the

22   inmate appeal system is to put the institutions and defendants on notice of problems, plaintiff's

23   failure to raise his retaliation claims against these defendants in SVSP-12-01686 did not meet that

24   goal.  Thus, unlike the retaliation claim against defendant Stratton, the court cannot excuse

25   plaintiff's failure to exhaust administrative remedies for the retaliation claims against defendants

26   Barnes, Wells, Chavez, Martinez, and Slaughter.  For this reason, summary judgment should be

27   granted in favor of these defendants on the retaliation claim. The claims should therefore be

28   dismissed without prejudice until plaintiff completes the inmate appeal process.

Likewise, plaintiff's deliberate indifference claims against defendants Barnes, Wells, Chavez, Martinez, and Slaughter must also be dismissed.  Plaintiff's only healthcare grievance filed between the January 25, 2012 incident and the August 22, 2012 filing of this action was SAC-HC-12025690, alleging that CSP-SAC medical staff failed to provide him with adequate medical treatment after the January 25, 2012 altercation.  This grievance was filed on February 20, 2013, nearly six months after plaintiff filed his amended complaint in this action.  (ECF No. 42 at 12.)  Accordingly, the court dismissed deliberate indifference claims against the medical staff at CSP-SAC for failure to exhaust administrative remedies before filing this action.  (Id. at 13.)

SAC-HC-12025690 does not contain any discussion of plaintiff's alleged confinement in an inoperable PSU cell.  Plaintiff admits this, and also that he did not file any other official inmate appeal pursuant to the PLRA concerning his alleged placement in an inoperable PSU cell.  (ECF No. 64 at 43-44.)  Plaintiff alleges that he verbally notified prison officials and that he complained via other means about the conditions of the cell at CSP-SAC (id.), but none of these actions suffice as an alternative for filing (or attempting to file) an official grievance pursuit to the PLRA.  As expressed above, the purpose of the PLRA process is to put prison officials on notice of problems and potential claims.  While the court excused plaintiff's failure to complete the appeal process concerning deliberate indifference against defendant Stratton, that scenario involved plaintiff actually starting the grievance process and putting the prison on notice of the problem via an initial appeal, even if the appeal was returned.  (ECF No. 43 at 16.)

The current scenario where plaintiff never even attempted to file a proper PLRA inmate grievance is distinct.  Without any formal grievances, the institution was never put on notice concerning plaintiff's allegations about the inoperable cell and his intention that the situation be rectified.  Accordingly, the court cannot excuse plaintiff's failure to comply concerning his deliberate indifference claims against defendants Barnes, Wells, Chavez, Martinez, and Slaughter.  Thus, summary judgment should be granted in favor of these defendants on the deliberate indifference claims.

////

1  **C.**     **First Amendment Retaliation Claim Against Defendant Stratton**

2       **1.**     **Claim Preclusion and Plaintiff's Habeas Corpus Claim**

3       Defendant Stratton argues that a final judgment entered by a California state court on

4  plaintiff's habeas corpus proceeding contesting the RVR precludes plaintiff from pursuing this

5  civil rights action.  (ECF No. 51 at 26-28.)  Plaintiff denies this argument, asserting that he is

6  entitled to the habeas process to challenge an RVR and it does not preclude subsequent civil

7  rights actions.

8       In Gonzales v. CDCR, the Ninth Circuit ruled that under California law, a state prisoner's

9  unsuccessful habeas petition challenging, on due process grounds, his placement in a secured

10  housing unit after prison officials determined that he was a gang member could not go forward.

11  The Gonzales court found that his subsequent § 1983 action against the officials alleging

12  retaliation, were barred on claim preclusion grounds.  739 F.3d 1226, 1233-34 (9th Cir. 2014).

13  The court reasoned that even though plaintiff's legal theory differed between the two actions, he

14  was still "challenging the same actions by the same group of officials at the same time that

15  resulted in the same harm."  Id. at 1234.

16       On March 22, 2013, plaintiff filed a petition for writ of habeas corpus, In Re Davon

17  McCoy, Case No. HC 013527A, in the Superior Court of the State of California, County of Kern.

18  (ECF No. 53-1.)  In this petition, plaintiff complained about his treatment at CSP-SAC after his

19  altercation with prison staff in R&R on January 25, 2012.  (Id. at 4-5.)  Plaintiff also complained

20  that defendant Stratton's issuance of an RVR for battery on a peace officer was false and

21  retaliatory.  (Id. at 4-5.)  Lastly, he complained that his February 3, 2012 retention in the ASU

22  was retaliatory and motivated by his complaints regarding the January 25, 2012 altercation in the

23  R&R. (Id.)  Plaintiff's legal theory in the habeas action was that the RVR deprived him of his due

24  process rights.  (Id. at 11.)  On June 3, 2013, the Court issued an opinion denying plaintiff's

25  petition for writ of habeas corpus. (Id. at 4-5.)

26       The claims in plaintiff's habeas petition are nearly identical to his claims in this action

27  concerning defendant Stratton's alleged retaliation.  (Compare ECF Nos. 53-1; 15 at 12-13.)

28  Although plaintiff alleged due process violations in his state habeas action and does not assert the

1    same precise theory here, the fact that plaintiff "seeks a different remedy or asserts a different

2    legal theory in his current challenge is irrelevant under California's claim preclusion doctrine."

3    Gonzales, 739 F.3d at 1234.  Plaintiff's habeas action involved the same rights, duties, and harm

4    raised in the present case, and so claim preclusion applies.

5         Specifically, in the habeas action, plaintiff complained that defendant Stratton's issuance

6    of an RVR for battery on a correctional officer was false and retaliatory.  (ECF No. 53-1 at 4-5.)

7    In the present case, plaintiff asserts that defendant Stratton's issuance of an RVR for battery on a

8    peace officer was retaliatory.  (ECF No. 15 at 12-13.)  In both cases, plaintiff asserts that he was

9    harmed by the issuance of this same RVR by the same prison official.  While the theory of

10   constitutional deprivation behind each of plaintiff's retaliation claims differs (due process

11   grounds in the habeas action and First Amendment grounds here, plaintiff is still "challenging the

12   same action[] by the same . . . official[] at the same time that resulted in the same harm."

13   Gonzales, 739 F.3d at 1233-34.

14        Accordingly, the undersigned recommends that defendant Stratton's summary judgment

15   motion concerning the retaliation claim be granted because it is barred by claim preclusion.

16        **D.     Qualified Immunity**

17        Finally, defendants argue that defendants Stratton, Epp, Barnes, Dingfelder, Sweeney, and

18   Hughes are entitled to qualified immunity concerning the excessive force claims against them.

19        In analyzing the qualified immunity defense, the court looks at the facts in the light most

20   favorable to plaintiff.  Johnson v. Bay Area Rapid Transit Dist., 724 F.3d 1159, 1168 (9th Cir.

21   2013).  "To determine whether an officer is entitled to qualified immunity, a court must evaluate

22   two independent prongs: (1) whether the officer's conduct violated a constitutional right, and (2)

23   whether that right was clearly established at the time of the incident. . . . These prongs may be

24   addressed in either order."  Castro v. County of Los Angeles, 797 F.3d 654, 663 (9th Cir. 2015)

25   (citing Pearson v. Callahan, 555 U.S. 223, 232, 236 (2009)).

26        "To determine that the law was clearly established, we need not look to a case with

27   identical or even 'materially similar' facts."  Serrano v. Francis, 345 F.3d 1071, 1077 (9th Cir.

28   2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739–41 (2002)).  The question instead is whether

1  the contours of the right were sufficiently clear that a reasonable official would understand that
2  his actions violated that right.  Id.; see also Saucier v. Katz, 533 U.S. 194, 202 (2001).

3      Defendants make two arguments in support of his assertion of qualified immunity.  First,
4  defendants contend they did not violate plaintiff's constitutional rights.  (ECF No. 51 at 29.)  As
5  demonstrated above, disputed issues of material fact preclude a finding in their favor on that
6  argument at summary judgment.

7      Second, defendants contend that a reasonable correctional officer in their position would
8  have believed their actions lawful.  "Qualified immunity operates . . . to protect officers from the
9  sometimes hazy border between excessive and acceptable force . . . and to ensure that before they
10  are subjected to suit, officers are on notice their conduct is unlawful."  Saucier, 533 U.S. at 206
11  (internal citations omitted).  Defendants assert that this action lies in that "hazy border" zone.
12  The undersigned disagrees.

13      As the court's findings above have established, there are still genuine issues of material
14  fact concerning whether plaintiff continued to resist after striking defendant Stratton with his
15  cane, whether it was necessary to slam plaintiff into the ground, and whether defendants then
16  struck plaintiff while he lay prone.  Viewing the evidence in the light most favorable to plaintiff,
17  the contours of plaintiff's right to be free from battery while laying prone on the ground were
18  sufficiently clear that a reasonable officer would understand that his or her actions were unlawful
19  in the situation confronted.  See Saucier, 533 U.S. at 202.  Accordingly, the court finds that
20  defendants Stratton, Epp, Barnes, Dingfelder, Sweeney, and Hughes are not entitled to qualified
21  immunity on plaintiff's excessive force claims against them.

22  **IV.    Conclusion**

23      For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

24      1.      Defendants' motion for summary judgment (ECF No. 51) be granted in part and
25  denied in part;

26      2.      Summary judgment be denied on behalf of defendants Stratton, Epp, Barnes,
27  Dingfelder, Sweeney, and Hughes concerning the Eighth Amendment claims;

28      3.      Summary judgment be granted on behalf of defendants Barnes, Wells, Chavez,

Martinez, and Slaughter for failure to exhaust administrative remedies concerning the deliberate indifference and retaliation claims;

      4.     Summary judgment be granted on behalf of defendant Stratton concerning the retaliation claim; and

      5.     Summary judgment be denied as to defendants Stratton, Epp, Barnes, Dingfelder, Sweeney, and Hughes concerning their assertion of qualified immunity.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

Any reply to the objections shall be served and filed within fourteen days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  March 1, 2017

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

TIM-DLB:10
DB / ORDERS / ORDERS.PRISONER.CIVIL RIGHTS / mcco.1137.msj

25